*Kyle, Arrington, Ethridge* and *Jones, JJ.,* concur.

JONES *v.* BAKER, d.b.a. BAKER REALTY COMPANY

No. 42096 January 2, 1962 135 So. 2d 846

834

*Simrall, Aultman & Pope,* Hattiesburg; *Colmer, Mc-Gehee & Colmer,* Pascagoula, for appellant.

*O. L. McLeod,* Pascagoula, for appellee.

GILLESPIE, J.

Appellant, Joe Jones, is a resident of Georgia. Appellee, J. L. Baker, is in the real estate business in Biloxi, Mississippi, and does business under the name of Baker Realty Company.

Appellee sued appellant claiming a ten percent real estate commission on the sale of 160 acres of land by one Dees to appellant for $16,000. Jurisdiction of the chancery court was acquired by attaching certain lands of appellant. The chancellor gave judgment in favor of appellee for $800, and appellant appealed to this Court.

There were some sharp conflicts in the testimony. These were resolved in favor of appellee. Therefore, the facts must be stated in the light most favorable to appellee, resolving all conflicts in favor of appellee, and giving the appellee the benefit of all reasonable inferences.

Appellant contacted appellee with the request that appellee see Dees and make an offer of $100 per acre for 160 acres of land Dees owned. Appellant agreed to pay appellee a commission of ten percent if the land could be bought at that price. Considerable negotiations were had in reference to the proposed purchase of said lands. Appellee or his salesman, Lowe, contacted Dees a number of times and the result of the negotiations were communicated to appellant. Three different propositions were considered before they finally agreed to terms based on a sale price of $16,000, or $100 per acre, with some changes made in reference to payment of 1960 taxes. Dees would not sign a formal contract for the sale of the land and the agreement on the part of Dees to sell and appellant to purchase rested in parole until the sale was consummated. At one time appellant was tendered a written contract for the payment of a ten percent commission to appellee. He would not sign

the contract, but stated the commission would be paid when the deal was closed. At one time appellant proposed that he pay appellee a commission only if Dees refused to pay one, but appellee did not agree to this arrangement. The deal was closed on May 27, 1960, in an attorney's office in Pascagoula. Dees sent a warranty deed conveying the property to appellant, a check for the documentary stamps, and a check for $800 payable to appellant. Neither appellant nor his salesman was present when the transaction was closed. Why Dees sent the check for $800, payable to appellee, and who asked him to do so, is not shown. Dees was not called by either party, but it is indicated that he was available. At the time of closing the transaction appellant paid over the purchase price of $16,000, and was delivered the deed and the two checks already mentioned. He delivered the deed and the check for the documentary stamps to Watts, his attorney, and telephoned appellee to meet him at a cafe in Biloxi and bring a $1600 earnest money check which appellant had previously given appellee. They met at the cafe and appellant handed appellee the $800 check signed by Dees, and appellee handed appellant the $1600 earnest money check signed by appellant, and which appellee had been holding pending consummation of the transaction. Appellee put the $800 check in his pocket without looking at it and did not discover until the following Monday that it was a check drawn by Dees and was for only $800. Appellee then wired appellant explaining that he had discovered the facts just stated, and requesting appellant to pay the agreed commission. Appellant declined to pay and this suit resulted.

██ ██ Appellant's first contention is that appellee wholly failed to prove a contract for the commission. His second contention is that appellee failed to show he was entitled to a real estate commission. These contentions are about the same and the chancellor resolved

the conflicts in favor of appellee. We cannot say he was manifestly wrong. The chancellor had a right to accept appellee's testimony which was clear to the point that appellant agreed to pay a ten percent commission.

The changes made during negotiations as to whether the whole purchase price should be paid in cash or on terms did not have any substantial bearing on the agreement concerning the commission. We do not find any merit in the stated contentions.

 █ Appellant contends that appellee is estopped to claim a commission from appellant because he kept and cashed the $800 check drawn by Dees. This is the most serious contention raised by appellant.

Appellant relies on the rule stated in 8 Am.Jur., Brokers, Section 164, as follows:

"It is a well-settled rule, founded on grounds of public policy, that a broker who secretly represents both parties to a transaction is not entitled to compensation from either. There can be no recovery from the party kept in ignorance, for as against him the broker has been guilty of breach of faith and contract. Nor can there be any recovery from the party who alone consented to the broker's acting in behalf of both, for he and the broker are equally guilty of the wrong committed against the other employer, and the law will not enforce an executory contract entered into in fraud of the rights of the latter.

"The fact that no actual fraud exists, or that the principal is not actually injured, does not prevent the application of the rule, which is intended not to be remedial of the actual wrong but to be preventive of the possibility of it."

Appellant stated that he agreed to pay a commission of five percent if appellee could not get a commission from Dees. The chancellor, however, was justified in finding that appellee never agreed to such an arrangement. The evidence given by appellee's agent Lowe

shows that appellant had discussed this matter with him and Lowe told appellant it would not hurt to try to get the commission out of Dees. On cross-examination of appellee, he stated that the $800 represented by the Dees check given him as aforesaid was for representing Dees. No one questioned appellee as to what he meant by that statement. Appellee testified that he represented appellant and there is no proof that he did in fact represent Dees or that he ever made any arrangements to receive a commission from Dees.

The chancellor stated in his opinion that no one accounted for the $800 Dees' check except that it was in the possession of appellant after the closing. The chancellor thought it should apply on the ten percent commission owed by appellant, and for that reason his judgment was for $800 instead of the $1600 sued for. As far as this record shows, appellant could have secured from Dees the $800 check. It was not proven that appellee was expecting any commission from Dees.

██ █ We adhere to the rule that an agent or broker cannot collect from anyone if he secretly represents both sides. That rule is grounded on sound public policy, and this Court would not give relief to anyone violating this salutary rule. ██ █ But appellant cannot invoke the rule in this case for two reasons: (1) He did not charge in his answer that appellee represented Dees and appellant secretly; he did not defend on that ground and made no such issue in the pleadings, and (2) there is no proof that appellee did in fact either represent Dees or except a commission from Dees; ██ █ and since an element of fraud, actual or constructive, is involved when a party defends on the ground that an agent secretly represented both parties, ██ █ the Court cannot assume facts not proven in order to invoke the rule. Dees could have given the court the facts in connection with the $800 check, but he was not called as a witness.

Appellant finally contends that the lower court erred in refusing to consider the testimony of Lowe and one Cook to the effect that Lowe, who was appellee's salesman, asked Cook if Cook was interested in purchasing the Dees' land. This evidence was not admitted, but appellant made his record and there is nothing in this testimony to show whom Lowe's firm would represent and charge a commission if Cook had been interested in buying the land. We find no error in not considering this testimony.

We are, therefore, of the opinion that the case should be and it is affirmed.

Affirmed.

*McGehee, C.J.,* and *Ethridge, Rodgers* and *Jones, JJ.,* concur.