979 So.2d 704 (2007)
CULBREATH REVOCABLE TRUST and Quad C. Farms, Appellants
v.
Dick S. SANDERS, Charlie V. Sanders, Dennis Churchwell and Lynley Churchwell, Appellees.
No. 2006-CA-00291-COA.
Court of Appeals of Mississippi.
September 4, 2007.
Rehearing Denied December 11, 2007.
*705 Thomas Henry Freeland, attorney for appellants.
William F. Schneller, Holly Springs, attorney for appellees.
Before MYERS, P.J., ISHEE and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. This is an appeal challenging the findings of a chancellor that no misrepresentations were made to a purchaser of land, and the award of earnest money as liquidated damages and attorney's fees pursuant to the contract for the sale of land. Finding no error, we affirm.

*706 FACTS
¶ 2. Don Culbreath is the settlor of the Culbreath Revocable Trust. His son Elliot is the beneficiary of that trust. Both Don and Elliot are partners comprising the Tennessee general partnership, Quad C. Farms. Don Culbreath had previously developed land and was experienced in other business ventures and transactions.
¶ 3. The appellees here were the parties selling the land involved in this dispute. They include Dick Sanders, his brother, Charlie Sanders, and husband and wife, Dennis and Lynley Churchwell. The owners of the property were Dick Sanders, Charlie Sanders, and Lynley Churchwell. Dennis had no ownership interest in the property apart from his wife.
¶ 4. In June 2003, Don and Elliot Culbreath were shown a 432 acre tract of land in Marshall County, Mississippi, by Dennis. The sellers had purchased the land seven days prior to Dennis showing the land to Culbreath. The property has a field road that runs through it and is raised approximately four feet above the level of the land. The property is adjacent to a creek and two creeks run through the property. During the June 2003 tour of the land, Culbreath inquired from Dennis whether the property flooded. Dennis communicated to Culbreath that approximately "twenty to thirty acres floods." Twenty to thirty acres of the property were designated as swamp or wetland on the topography map which was given to Culbreath and later attached to the contract he would sign. The topography map Culbreath received showed the elevation of much of the property to be on the same level as the banks of an adjacent river and a creek. Culbreath also requested a flood map that would indicate how much of the land flooded. Culbreath did not include any language in the contract reserving a right to cancel the purchase in relation to the amount of land that flooded.
¶ 5. On June 27, 2003, Don, acting on behalf of himself, his son, the trust, and partnership, signed a contract to purchase the property. Dick Sanders and Dennis signed the contract as the sellers. Charlie Sanders and Lynley Churchwell did not sign the contract. The agreed purchase price for the property was $850,000. The earnest money totaled $65,000 including $10,000 in cash, and used equipment, including a backhoe, and a bulldozer valued at $55,000. The initial closing date was set as August 15, 2003. Pursuant to the terms of the contract, Culbreath took possession of the property on the date the contract was signed. Culbreath was to pay an agreed amount of rent each month until the closing took place.
¶ 6. Evidence was presented that, subsequent to the execution of the contract, Elliot Culbreath no longer wanted to purchase the property. Evidence was also presented that Don was still interested in completing the purchase on his own. The chancellor found that Don was still attempting to meet the closing date even after having received the flood plain map from the U.S. Army Corps of Engineers. By letter dated September 3, 2003, Dick Sanders extended the closing date to September 12, 2003. He also stated that the earnest money would be forfeited if closing did not take place by September 12.
¶ 7. In a letter dated September 9, 2003, counsel retained by Culbreath informed Dick Sanders that Don and Elliot Culbreath would not be closing on the property because Dennis misrepresented the flood zone on the property. Culbreath's counsel alleged in the letter that over eighty percent of the property is in the flood zone. A demand was made for the return of the portion of the earnest money and equipment that had already been paid *707 and that the contract be rescinded. Culbreath had only paid $10,000 in cash and given $20,000 in equipment toward the total earnest money set at $65,000. None of the earnest money was returned to Culbreath.
¶ 8. On April 27, 2004, Culbreath filed suit in the Marshall County Chancery Court. Culbreath alleged fraud, intentional and negligent misrepresentation, and failure to make statutory disclosures. He sought rescission of the contract, actual and punitive damages, and attorney's fees. A trial was held, and proposed findings of fact and conclusions of law were submitted by the parties to the chancellor.
¶ 9. Prior to the date of the trial, the property had already been sold to other parties. Dick Sanders testified that he purchased an additional seven acres adjacent to the property. He also testified that improvements were made including an additional road being built through the property. The property was then divided and sold to various purchasers.
¶ 10. On January 25, 2006, the chancellor rendered his judgment. He found no misrepresentations were made to Culbreath, and that Culbreath did not rely on statements Dennis made concerning how much of the property flooded. Pursuant to the terms of the contract, the chancellor awarded the sellers the balance of the earnest money owed with interest in the amount of $39,518.89, and attorney's fees in the amount of $3,750. Aggrieved by this decision, Culbreath appeals. His appeal has been assigned to this Court.

DISCUSSION
¶ 11. We will not disturb the chancellor's findings if they are supported by substantial evidence and are not manifestly wrong or clearly erroneous. Estate of Dykes v. Estate of Williams, 864 So.2d 926, 930(¶ 9) (Miss.2003). Questions of law are reviewed de novo. Id.
1. Validity of Contract
¶ 12. Culbreath argues that the chancellor erred in refusing to rescind the contract which was void by virtue of the statute of frauds. However, the parties conceded the validity of the contract. The chancellor stated that neither party advanced proof that there was an agency relationship between Dick Sanders and Charlie Sanders or Lynley Chruchwell. There was no proof that Don Culbreath had the capacity to bind his son, Elliot, through a power of attorney. The chancellor was "inclined to put the parties back into the position they occupied before signing [the contract]," but did not do so because of the concession as to validity. The chancellor stated in his judgment that the "Court takes pain in finding that this was a contract." The chancellor concluded that the contract was valid due to the pleadings of the parties and admissions in their briefs that a valid contract did exist. The chancellor was uncomfortable in using the statute of frauds to conclude no contract existed due to the admissions of the parties.
¶ 13. Based upon the arguments of the parties and the findings of the chancellor, the validity of the contract is not an issue relevant in this appeal. Any affirmative defense based upon the statute of frauds has been waived. Pass Termite & Pest Control, Inc. v. Walker, 904 So.2d 1030, 1033(¶ 10) (Miss.2004); see also Canizaro v. Mobile Communications Corp. of Am., 655 So.2d 25, 30 (Miss.1995) (holding that the defense of the statute of frauds may be waived).
2. Misrepresentation By Fraud or Negligence
¶ 14. Culbreath argues that the chancellor erred in concluding that there *708 was neither a fraudulent nor negligent material misrepresentation made to Culbreath. Culbreath relies on case law in arguing that he had a right to rely on representation of Dennis without further inquiry. Nash Mississippi Valley Motor Co. v. Childress, 156 Miss. 157, 164-65, 125 So. 708, 709 (1930). In Nash, a purchaser of a used vehicle attempted to return the vehicle and rescind the purchase contract. Id. The basis for the recision was one not good at law. Id. The purchaser then discovered that the mileage of the purchased vehicle had been altered. Id. The supreme court held that if "A attempts to rescind his contract with B on a ground not good in law, but there exists, at the time, a ground that is good in law, A can, later, rely on the good ground and is not bound to stand on the false ground." Id. (citation omitted). Culbreath also argues that Dennis is guilty of fraud if he knew more than twenty to thirty acres of the land flooded or if he was ignorant of that fact. J.A. Fay & Egan Co. v. Louis Cohn & Bros., 158 Miss. 733, 749, 130 So. 290, 292 (1930). Culbreath concludes that the findings of the chancellor are not supported by the evidence.
¶ 15. At trial, Culbreath was required to prove the following to meet his burden on the claim of fraudulent misrepresentation:
The elements of fraud, which must be proven by clear and convincing evidence, include: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury. In order to establish fraudulent misrepresentation, the elements of fraud must be proven.
Levens v. Campbell, 733 So.2d 753, 761(¶ 35) (Miss.1999) (internal citations omitted). Culbreath was required to prove the following to meet his burden on the claim of negligent misrepresentation:
To recover on a cause of action based on negligent misrepresentation, [a plaintiff] must prove by a preponderance of the evidence: 1) a misrepresentation or omission of a fact; 2) that the representation or omission is material or significant; 3) failure to exercise reasonable care on the part of the defendant; 4) reasonable reliance on the misrepresentation or omission; and 5) damages as a direct result of such reasonable reliance.
Id. at 762(¶ 40) (internal citations omitted).
¶ 16. In the present case, the chancellor found that Culbreath failed to prove at least two elements of fraudulent misrepresentation: that the representation of Dennis was false, and that Culbreath relied on the truth of that representation. The chancellor found that the statement "twenty to thirty acres floods" was not false. The chancellor found that the parties never discussed the difference between how much of the land flooded or how much of the land was within the 100-year flood plain. The chancellor also found that there was no evidence whether Culbreath's question about how much of the land flooded meant how much floods annually, regularly, or under the 100-year flood plain.
¶ 17. The evidence demonstrated that the term "flood" was not used interchangeably with "flood plain." There was evidence that Dennis did not know the amount of acreage that was in the 100-year flood plain, but stated only that twenty to thirty acres of the property flooded. There was also evidence that Dennis relied upon the topography map showing twenty *709 to thirty acres of swamp or wetlands within the property.
¶ 18. In addition, there was evidence that Culbreath did not rely upon the statement of Dennis concerning the flooding of the property. Culbreath testified that he knew a contingency provision could have been included in the contract about any concerns relating to flooding. Culbreath chose not to include such a provision. Of importance is that Culbreath was given the topography map prior to signing the contract. That map showed no grade variation between a river and creek, and the contour lines extending over into the property.
¶ 19. The chancellor questioned Culbreath's credibility and gave little weight to his testimony due to his "demeanor and unconfident answers that he gave. . . ." In his brief, Culbreath attempts to explain a misstatement he made at trial. However, it is "the chancellor's duty to evaluate the credibility of the witnesses." Simmons v. Jaggers, 914 So.2d 693, 697(¶ 20) (Miss.2005).
¶ 20. The record demonstrates that there was ample evidence to support the chancellor's conclusion that Dennis did not make a false or incorrect statement when he communicated to Culbreath that twenty to thirty acres of the property floods. Having found that the statement Dennis made was not a misrepresentation, and that Culbreath did not rely upon that statement, the chancellor also concluded that Culbreath failed to meet the required burden to prove negligent misrepresentation.
¶ 21. The chancellor's finding that Culbreath failed to meet the required burden of proof on the claims of fraudulent and negligent misrepresentation is supported by the evidence. The evidence the chancellor relied upon is of sufficient weight to support his findings. Our affirmance of the chancellor's findings that Churchwell did not make a misrepresentation to Culbreath and that Culbreath did not rely on any statement made by Dennis renders moot the issue of whether Dennis was acting as an agent of the Sellers.
3. Damages
¶ 22. Culbreath argues that the chancellor erred in awarding any damages because the property was eventually sold for approximately $1,200,000. This amount was greater than the $850,000 Culbreath agreed to pay for the property. Culbreath cites case law in arguing that liquidated damages in a contract for the sale of property are not allowed where there are no actual damages. Maxey v. Glindmeyer, 379 So.2d 297, 300-01 (Miss. 1980) (discussed below); Jones v. Miss. Farms Co., 116 Miss. 295, 305-07, 76 So. 880, 884 (1917) (case involving a contract, but not for sale of property, holding that liquidated damages cannot be unconscionable and extravagant). Culbreath also relies on case law holding that damages must not exceed that which was actually sustained by a non-breaching party. Eastland v. Gregory, 530 So.2d 172, 175 (Miss. 1988) (actual damages awarded to seller where seller elected to sue for actual damages instead of accepting earnest money as liquidated damages, and advanced proof seller suffered $12,500 in actual damages and attorney's fees). We note that Eastland dealt with a situation where actual damages were sought by a seller, not liquidated damages as in the present case. Id. at 174. The applicability of the supreme court's statement in Eastland, that a "party who breaches a contract is only liable for the damages caused by the breach, and the non-defaulting party is only entitled to be put in the same position he would have been had there been no breach," should be *710 read in light of the fact that actual damages were at issue there. Id.
¶ 23. The Sellers here argue that earnest money is treated as liquidated damages in real estate transactions, even where the contract does not declare it as liquidated damages. The applicable case law they rely upon is discussed below.
¶ 24. Dick Sanders testified that after Culbreath breached the contract, Sanders purchased seven additional acres adjacent to the property. Sanders also testified that the property was further developed including an additional road being built through the property. Sanders testified that the expanded and improved property was not sold as one tract of land, but was sold in seven or eight different tracts. The expansion, improvements, and sales took place within a two-year period after Culbreath breached the contract.
¶ 25. The relevant portion of the contractual provision providing for damages states:
in the event of breach of this contract by Buyer, Seller at his option may either: (1) accept the earnest money deposit as liquidated damages and this contract shall then be null and void, or (2) enter suit in any court of competent jurisdiction for damages, giving credit on said damages for the said earnest money deposit, or (3) enter suit in any court of competent jurisdiction for specific performance.
. . . .
If it becomes necessary to insure the performance of the conditions of this contract for either party to initiate litigation, then the losing party agrees to pay reasonable attorney's fees and court costs in connection therewith.
The chancellor found that the parties were bound to the liquidated damages provision in the contract.
¶ 26. As early as 1847, Mississippi law has been that earnest money is held to be liquidated damages. Sims v. Hutchins, 16 Miss. 328, 8 S. & M. 328 (1847). The Sims opinion states:
This suit was instituted before a justice of the peace, for money had and received. It seems that Hutchins by a parol contract, entered into in January, 1840, agreed to buy of Sims a tract of land for six hundred and fifty dollars, one half of which was to be paid on the first of March following, when the contract was to be consummated and possession delivered. Hutchins, in part performance, paid Sims fifty dollars, but on the first of March was unable, as he states, to pay the balance, and refused to complete the contract, though Sims was very willing to do so on his part. He says that Sims did not expressly agree to a rescission of the contract, though he said nothing when informed by Hutchins of his intended abandonment. Another witness states that Sims was willing and anxious to comply on his part, but the vendee refused to make the payment, on the ground, as stated by him, that he had made a bad bargain, although he had the money. Sims was even willing to give time for payment, and offered to go to Lexington to execute a deed. This witness also states, that Sims did not agree to rescind the contract.
On this state of the evidence, it is impossible to conclude that the contract was rescinded by mutual consent, either express or implied, and without such mutual rescission it must be clear that the amount paid in part performance, cannot be recovered back. The only grounds for such a recovery are the unwillingness or inability of the vendor to convey according to contract, or a mutual abandonment of the contract. That the contract *711 was not in writing may be good ground of defence, when specific performance of the contract is sought against the vendor, for whose benefit the statute was passed; but if the vendor is willing to perform, the price paid cannot be recovered back. Contracts by parol for land are generally regarded as voidable merely. Philbrook v. Belknap, 6 Vt. 383. On this principle it is clear, that if the vendor does nothing to avoid the contract, but on the contrary is both able and willing to perform, the vendee cannot recover what he has paid. The precise point now before us was raised in the case of Dowdle v. Camp, 12 Johns. [N.Y.] 451, and it was holden that the vendee could not recover back his money without some default of the vendor. The same point was also very fully considered in Shaw v. Shaw, 6 Vt. 69, and decided in the same way.
Id. at 330-31. This rule of law was repeatedly applied by the supreme court, the most recent application in 1976. Coats v. Taylor, 332 So.2d 417, 419-20 (Miss.1976) (quoting Sims, 16 Miss. at 331). The long-standing strict application of Sims, that the "only grounds" for recovery of earnest money are the unwillingness or inability of the vendor to convey according to contract, or a mutual abandonment of the contract, was modified just four years after that rule was applied in Coats. Maxey v. Glindmeyer, 379 So.2d 297, 300-01 (Miss.1980).
¶ 27. In Maxey, a contract for sale of land contained a liquidated damages provision stating:
In the event that the purchaser fails to comply within the time specified, the seller shall have the right to declare the $75,000 of the deposit, ipso facto forfeited as liquidated damages without formality beyond tender of title to the purchaser; or the seller may demand specific performance.
Maxey, 379 So.2d at 299. The supreme court, for the first time, applied to land sales contracts the requirement that liquidated damages be reasonable as stated in the Uniform Commercial Code. That requirement states:
Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasability[nonfeasibilty] of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.
Id. at 301 (quoting Miss.Code Ann. § 75-2-718 (1972)).
¶ 28. The liquidated damages in Maxey were set at $75,000. The purchase price of the property was $150,000.[1] The damages were held to be unreasonable because it was imposed regardless of whether the seller's damages amounted to $75,000 or not. Id. The supreme court reversed and remanded the award of damages for a determination on the amount of damages the seller actually sustained due to the buyer's breach. Id. The seller was entitled to an "amount only which will reimburse her for those damages." Id.
¶ 29. The supreme court has mentioned Maxey in summarizing the law on liquidated damages. Board of Trustees v. Johnson, 507 So.2d 887, 889-90 (Miss. 1987). There, the court stated:
In [Maxey], this Court stated, "Equity will enforce a contract for liquidated damages if such liquidated damages can *712 be found to be reasonable and proper in the light of the circumstances of the case." Indeed, parties agree to the payment of liquidated damages where it is difficult to determine actual damages, resulting from a breach. Consequently, if such are not a reasonable pre-estimate of damages, but are unreasonable or constitute a penalty, their provision is unenforceable. To distinguish then liquidated damages from a penalty, courts must look to the parties' intentions.
Johnson, 507 So.2d at 889-90 (internal citations omitted).
¶ 30. We do not read Maxey to render meaningless the liquidated damages provisions in contracts to purchase property. Rather, Maxey stands for the rule that the norms of equity are applicable to all liquidated damages provisions. See R.K. v. J.K., 946 So.2d 764, 773-74 (¶¶ 18-26) (Miss.2007) (upholding a chancellor's refusal to enforce a liquidated damages provision in a property settlement agreement by applying the clean hands doctrine to bar enforcement). We also read Maxey as setting out the rule that where the liquidated damages are unreasonable, such as earnest money being fifty-percent of the purchase price, a party must then seek to recover actual damages by demonstrating such damages were actually incurred.
¶ 31. The liquidated damages here were in the amount of $65,000 which included $10,000 cash and $55,000 in equipment. The earnest money here was approximately 7.6% of the purchase price. As a matter of published record, an earnest money amount of 7.6% seems to be reasonable as evidenced in many cases reviewed by the appellate courts of this State noting similar percentages of earnest money. See, e.g., Earwood v. Reeves, 798 So.2d 508, 510(¶ 4) (Miss.2001) (7.6% earnest money, $100,000 on a $1,300,000 purchase); Wade v. Selby, 722 So.2d 698, 699(¶ 2) (Miss. 1998) (10.5% earnest money, $3,000 on a $28,500 purchase); Jones v. Baker, 242 Miss. 833, 836-37, 135 So.2d 846, 848 (1962) (10% earnest money, $1,600 on a $16,000 purchase).
¶ 32. In the present case, the need for liquidated damages is evident as it would be extremely difficult to estimate possible damages in the event of a breach. The language of the contract demonstrates that a preset amount of damages was the intention of the parties. It is implied in the chancellor's award of earnest money as damages that he did not think the amount to be unreasonable. The subsequent expansion, improvement, and sale of the land should not render the liquidated damages provision in the contact meaningless. The contract involved a substantial sum for the purchase price. The exact damages that could result in the event of a breach would understandably be difficult to determine before hand, and could be substantial. The liquidated damages were well under ten percent of the purchase price, an amount that has been used in other contracts as a reasonable amount of earnest money. Being reasonable, it was within the discretion of the chancellor to enforce the liquidated damages provision of the contract. On this record, we will not disturb the determination of the chancellor to enforce that provision.
¶ 33. The chancellor was also authorized under the contract to award attorney's fees to the prevailing party. The chancellor followed the provisions of Mississippi Code Annotated section 9-1-41 (Rev.2002) as to the reasonableness of the fees awarded. We find no error in the award of attorney's fees and other findings and conclusions of the chancellor.
¶ 34. THE JUDGMENT OF THE MARSHALL COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS *713 OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.
NOTES
[1] There was a proposed modification of the original contract which would have increased the purchase price to $200,000, but the opinion is not clear if that was the set price in the final contract. See Maxey, 379 So.2d at 300.