# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00174-COA

JEROME HENDERSON AND WILLIE HENDERSON

APPELLANTS

v.

ROOSEVELT BLOUNT

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/2016 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | KENT E. SMITH |
| ATTORNEY FOR APPELLEE: | ROOSEVELT BLOUNT (PRO SE) |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED: 05/08/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., WESTBROOKS AND TINDELL, JJ.

### TINDELL, J., FOR THE COURT:

¶1. Jerome Henderson and Willie Henderson appeal the judgment of the Marshall County Circuit Court, which held that their breach of a lease-purchase contract entitled Roosevelt Blount to rescission of the contract and return of all monies he paid to or on behalf of the Hendersons. On appeal, the Hendersons claim the trial court awarded damages under an unenforceable liquidated-damages clause, failed to apply the defense of quasi-estoppel, and failed to base its determination on substantial credible evidence. After review, we find no error and affirm the circuit court's judgment.

## FACTS

¶2.    On May 17, 2013, the Hendersons and Blount entered into a written agreement (the contract) that contemplated Blount's lease and eventual purchase from the Hendersons of five acres, including an existing structure (the building) and the use of its name, "Club Emotions."  In the event of a breach or failure in certain aspects of the contract, the contract set forth remedies in separate clauses that applied depending on the specific breach or failure of either party.  The contract terms relevant to this appeal required the Hendersons to make, prior to the start of the contract, certain building repairs including (but not limited to):  full and total repair of the roof; repair of the exterior entrance ceilings; and curtailment of water leaking into the restroom.

¶3.    In two separate clauses, once as "Covenants of the Landlord/Seller," and again under "Special Provisions," the contract delineated those repairs in all caps and bold.  The contract further set forth the remedies due to Blount if the Hendersons failed to complete the repairs:[1] void the contract by written notice to the Hendersons and receive all monies paid thereunder in return; or complete the repairs himself and receive reimbursement or credit toward the payments due under the contract.  Regarding Blount's obligations to the Hendersons, the contract required the tenant/buyer, Blount, to make monthly payments of $3,000 to the

---

[1] The contract language on this point reads as follows:

"Landlord/Seller will complete the following repairs or this Lease Purchase will become null and void and all monies paid by Tenant/Buyer will be immediately refunded by Landlord/Seller or, at Tenant/Buyer's option, Tenant/Buyer may accept the Lease Purchase and complete[] the items listed below . . . .  THE FIRST MONTH OF THIS LEASE PURCHASE IS TO START ONCE ALL REPAIRS ARE COMPLETE BY LANDLORD/SELLER . . . ."

Hendersons toward the total purchase price of $125,000. Blount's default in those payments entitled the Hendersons to keep all monies paid.[2]

¶4.    For at least eighteen months after signing the contract in May 2013, Blount made a number of payments to or on behalf of the Hendersons. Blount presented direct evidence from his wife, April Blount, that he paid the Hendersons $30,420 during this eighteen-month time span. All parties agree that this amount fell short of the $3,000 a month the contract contemplated for use of the property and the repaired building. However, during this time, the Hendersons failed to undertake the required repairs.

¶5.    Between November 2014 and early 2015, the Hendersons prematurely demanded payment from Blount of the remaining balance due on the full contract amount of $125,000. And, in early 2015, the Hendersons terminated Blount's use of the property when they sued for Blount's removal from the property by writ in the Marshall County Justice Court. Thereafter, in April 2015, Blount sued the Hendersons for breach of contract in the circuit court and sought $38,771.[3] The circuit court held a bench trial on January 4, 2016, with the parties proceeding pro se.[4] After hearing from the parties and their witnesses, the court

---

[2] The contract language on this point reads as follows: "LIQUIDATED DAMAGES: Should Tenant/Buyer default on this agreement, Landlord/Seller shall keep all monies paid as liquidated damages."

[3] This amount consisted of $30,077 paid to the Hendersons and $8,694 for reimbursements in improvements made.

[4] A full delineation of the procedural history in the circuit court would include: the Hendersons answered on May 20, 2015, denying all allegations of the complaint; the circuit court held a hearing on June 1, 2015; and on June 29, 2015, the court granted Blount a default judgment in the amount of $38,771, as well as post judgment interest at 8% per annum. The circuit court later set aside the default judgment because it was entered in error.

3

rendered a judgment in favor of Blount. The circuit court held: the Hendersons committed several material breaches of the contract; Blount was entitled to rescission of the contract; and Blount was entitled to a return of all monies paid in the amount of $30,427. Aggrieved, the Hendersons appeal.

## STANDARD OF REVIEW

¶6. On the issue of contract construction and defenses to its enforcement, "[t]he standard of review for questions concerning the construction of contracts are questions of law that are committed to the court rather than to the fact-finder." *Fairchild v. Bilbo*, 166 So. 3d 601, 605 (¶9) (Miss. Ct. App. 2015) (citing *Cherry Bark Builders v. Wagner*, 781 So. 2d 919, 921 (¶5) (Miss. Ct. App. 2001)). "Appellate courts review questions of law de novo." *Id.*

¶7. This Court must defer to the trial court's factual determinations when they are supported by substantial evidence unless the trial judge abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *Covington Cty. v. G.W.*, 767 So. 2d 187, 189 (¶4) (Miss. 2000) (quoting *Church of God Pentecostal Inc. v. Freewill Pentecostal Church of God Inc.*, 716 So. 2d 200, 204 (¶15) (Miss. 1998)).

## ANALYSIS

¶8. On appeal, the Hendersons assert: (1) quasi-estoppel precludes Blount from recovery; (2) the contract's damage clause the trial court enforced is an unreasonable liquidated-damages clause; and (3) the trial court's determination of damages was not based on substantial credible evidence.

### I. *Quasi-estoppel*

¶9.   The long recognized doctrine of quasi-estoppel "forbids one from both gaining a benefit under a contract and then avoiding the obligations of that same contract." *Bailey v. Kemp*, 955 So. 2d 777, 782 (¶21) (Miss. 2007).  A party "cannot claim benefits under a transaction or instrument and at the same time repudiate its obligations." *Wood Naval Stores Expert Ass'n v. Gulf Naval Stores Co.*, 220 Miss. 652, 664, 71 So. 2d 425, 430 (1954).  This estoppel acts to forbid one from both gaining a benefit under a contract and then avoiding his obligations in that same contract. *Bailey*, 955 So. 2d at 782 (¶21).

¶10.   The Hendersons ask for application of quasi-estoppel as a defense to Blount's contractual claims.  This is not a case giving rise to that defense.  A simple review of the facts reflects that the Hendersons benefitted from receiving the lease payments but failed to fulfill their obligations to repair the premises.

¶11.   The Hendersons' contention that Blount's partial failure to make full monthly payments somehow blocks Blount from recovery is also without merit.  The contract clearly delineates the penalties for the specific breaches or failures that occurred.  Thus, this is a case grounded on varying degrees of mutual negligence in performance under the contract that can and should be resolved by the contract terms drafted by the parties themselves.

¶12.   *Bott v. J.F. Shea Co.*, 299 F.3d 508 (5th Cir. 2002), illustrates the basis for denying application of quasi-estoppel in this case.  In *Bott*, the contract required a subcontractor to obtain insurance naming the contractor as an additional insured.  The subcontractor did so but improperly identified the contractor in the insurance documents.  Despite receiving the certificates of insurance that reflected the error, with knowledge that he was not listed as an

additional insured, the contractor allowed the subcontractor to perform under the contract. *Id.* at 510. Thus, both parties to the *Bott* contract erred in some respects with regard to their actions and obligations under the contract. *Id.* at 513. On review, the Fifth Circuit found it was inappropriate for the district court to apply the equitable defense of quasi-estoppel to the parties' mutual negligence when the *Bott* contract's provisions adequately addressed the breaches at issue. *Id.* at 513-14.

## II. *Liquidated-Damages Clause*

¶13. The Mississippi Legislature and the Courts have spoken on the subject of preset liquidated damages. Miss. Code Ann. § 75-2-718 (Rev. 2016); *Culbreath Revocable Tr. v. Sanders*, 979 So. 2d 704, 712 (¶29) (Miss. Ct. App. 2007). "Equity will enforce a contract for liquidated damages if such liquidated damages can be found to be reasonable and proper in the light of the circumstances of the case." *R.K. v. J.K.*, 946 So. 2d 764, 774 (¶23) (Miss. 2007) (citing *Maxey v. Glindmeyer*, 379 So. 2d 297, 301 (Miss. 1980)).

¶14. To be enforceable, liquidated-damage clauses, those bargained for and preset-by-contract damage estimates, must be reasonable in light of the anticipated harm caused by the breach. *Culbreath Revocable Tr.*, 979 So. 2d at 712 (¶29); *Maxey*, 379 So. 2d at 301. To evaluate liquidated-damage clauses, we look at: (1) the parties' intention to set an agreed amount of damages at the time of making the contract; and (2) the reasonableness of the amount set in relation to any probable damage that may follow the specific breach. *Hovas Const. Inc. v. Bd. of Trs. of W. Line Consol. Sch. Dist. 2012*, 111 So. 3d 663, 666-67 (¶12) (Miss. Ct. App. 2012).

¶15. The Hendersons claim the contract's liquidated-damages clause pertaining to their breach is unenforceable and allegedly filed in retaliation after Blount's removal from the property. They also discuss the alleged ease of determining damages under the alternate and elective remedy provided by the contract. The Hendersons contend the damages clause, as enforced, is nothing more than a retaliatory penalty. We find their argument is an inaccurate analysis of the issue.

A. *The contract reflects the parties' intent to, in the event of specific breaches or failures, recover their estimated damages through delineated contract provisions.*

¶16. In *Shields v. Early*, the Mississippi Supreme Court stated that: "[w]hether a sum stipulated is a penalty or liquidated damages is a question of construction to be decided upon the terms and inherent circumstances of each particular contract, judged as at the time of the making of the contract, not as at the time of the breach." *Shields v. Early*, 132 Miss. 282, 297, 95 So. 839, 841 (1923) (citation and internal quotation marks omitted). Thus, to determine whether the outlined sum—refund of all monies paid—was intended as liquidated damages, we first look to the contract itself.

¶17. There is a clause titled, "LIQUIDATED DAMAGES," applicable in the event of Blount's default; and there is a separate clause titled, "SPECIAL PROVISIONS," applicable in the event of the Hendersons' failure to make delineated repairs. By their signatures, the parties expressed consent to those provisions, which provide a remedy in the event of either party's failure to perform certain duties set forth in the contract. The contract clearly states that the Hendersons' initial duties regarding the repairs were vital to the contract's existence;

7

that the contract's lease term was not even to start until said repairs were made; and that the Hendersons' failure to perform those initial duties entitled Blount to rescission of the contract and a discharge from the performance of his promises to pay the monthly sums.[5] *Matheney*, 248 Miss. at 849, 161 So. 2d at 519-20.

### B. *The damages, estimated in advance by the parties, are not unreasonable*.

¶18. Consideration of whether the estimated sum is out of proportion to the damages that might result from the Hendersons' breach is aided by the following statement:

> c. Where the amount of loss or harm that has been caused by a breach is uncertain and difficult of estimation in money, experience has shown that the estimate of a court or jury is no more likely to be exact compensation than is the advance estimate of the parties themselves. Further, the enforcement of such agreements saves the time of courts, juries, parties, and witnesses and reduces the expense of litigation. In such cases, if it is not shown that the principle of compensation has been disregarded, the liquidation by the parties is made effective.

Restatement (First) of Contracts § 339 (Am. Law Inst. 1932).

¶19. The Hendersons offer no proof to show the outlined sum is unjust or oppressive or disproportionate to the damages. *See Hovas Const. Inc.*, 111 So. 3d at 666-67 (¶12). Instead, they allege the damages are retaliatory in nature. And, while claiming the damage clause is unenforceable, they ask that Blount be restrained solely to enforcement of the alternate remedy provided therein—acceptance of the lease and cost of the repairs as damages.

---

[5] The contract language on this point reads as follows: "Landlord/Seller will complete the following repairs or this Lease Purchase will become null and void and all monies paid by Tenant/Buyer will be immediately refunded by Landlord/Seller . . . . THE FIRST MONTH OF THIS LEASE PURCHASE IS TO START ONCE ALL REPAIRS ARE COMPLETE BY LANDLORD/SELLER . . . ."

Additionally, they argue that this alternate remedy, the fair market value of the repairs, is an easily calculated damage value for an appraiser or contractor.

¶20. The Hendersons clearly contracted to complete certain repairs prior to the start of the lease-purchase. If those repairs were not completed, the Hendersons clearly agreed that Blount could recover, in damages, all monies that he had paid to that date or the cost of the repairs.[6] Alternatively, the amounts Blount paid during his possession of the property, which nearly total the damages awarded by the trial court, are outlined, by date and amount, in his wife April's testimony. Only where the stipulated amount bears no reasonable relationship to the probable or actual loss, and where damages can be easily ascertained, should the damage provision be treated as a penalty. *Cont'l Turpentine & Rosin Co. v. Gulf Naval Stores Co.*, 244 Miss. 465, 484, 142 So. 2d 200, 209 (1962). As shown in the testimony, the amount of damages awarded is not out of line with the overall expenditures associated with Blount's acceptance and performance by payment under the contract. Thus, we find no error in the trial court's award to Blount of the contracted amount of preset liquidated damages.

### III. *Judgment Based on Substantial Credible Evidence.*

¶21. Applying our standard of review, the trial court's judgment must be affirmed if supported by substantial credible evidence. *Thompson ex rel. Thompson v. Lee Cty. Sch.*

---

[6] The contract language on this point reads as follows: "Landlord/Seller will complete the following repairs or this Lease Purchase will become null and void and all monies paid by Tenant/Buyer will be immediately refunded by Landlord/Seller or, at Tenant/Buyer's option, Tenant/Buyer may accept the Lease Purchase and complete[] the items listed below, and the cost of same will be recovered . . . . THE FIRST MONTH OF THIS LEASE PURCHASE IS TO START ONCE ALL REPAIRS ARE COMPLETE BY LANDLORD/SELLER . . . ."

*Dist.*, 925 So. 2d 57, 62 (¶7) (Miss. 2006). We must give deference to the trial judge, sitting as the trier of fact, who has the sole authority for determining the credibility of the witnesses. *City of Jackson v. Lipsey*, 834 So. 2d 687, 691 (¶14) (Miss. 1991); *Rice Researchers Inc. v. Hiter*, 512 So. 2d 1259, 1265 (Miss. 1987). We "must review the record and accept all evidence that would reasonably support the judgment." *Donaldson v. Covington Cty.*, 846 So. 2d 219, 227 (¶34) (Miss. 2003) (citing *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994)). And, where there is conflicting evidence, we must give great deference to the trial judge's findings. *McElhaney v. City of Horn Lake*, 501 So. 2d 401, 403 (Miss. 1987).

¶22. The Hendersons admit Blount made multiple payments between May 2013 and January 2014. Blount's wife, April, testified these payments totaled a sum of over $17,500. In addition to this amount, April's testimony reveals Blount made other payments through January 2014 and beyond. Blount presented direct evidence from his wife that a total of $30,420 in payments were made to the Hendersons during the time span between the execution of the contract and Blount's removal from the property.[7]

¶23. Out of the thousands of dollars in payments testified to by April, the Hendersons, for the first time in their reply brief, take exception to a solitary payment item regarding a payment of $2,500 on June 25, 2013. The Hendersons direct this Court to a memorandum or receipt attached to the contract that purports to be reflective of a payment on June 25, 2013

---

[7] By clerical error or otherwise, the final judgment was entered for $30,427, rather than the $30,420 in payments testified to by April. The record reflects no motion to correct the numbers, nor explanation, and the parties did not bring this discrepancy before us.

for only $1,750.[8]  So, while the parties have dissimilar recollections of the payments made, the record as a whole clearly reflects sufficient evidence for the trial court's determination of damages.

¶24.    Examining the entire record and accepting the evidence which reasonably tends to support or favor the lower court's findings of fact, we find there is substantial credible evidence to support the trial court's factual determination for the award of $30,420 in damages.

### CONCLUSION

¶25.    Because we find no error, we affirm the circuit court's judgment.

¶26.    **AFFIRMED.**

   **LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.  WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., NOT PARTICIPATING.**

---

[8] While this memorandum is referenced in the Hendersons' reply brief and appears to reflect a $1,750 payment on June 25, 2013, rather than $2,500, it was neither noted as an amendment to any payment claim nor expressly pointed out to the trial court for consideration.