FAIR, J.,
for the Court:
¶ 1. The Covington County Chancery Court granted Constance Sims a divorce from Stephen Sims on the ground of felony incarceration. The court also awarded physical custody of the couple’s minor child to Constance and divided the marital property. Constance appeals and argues that the chancery court erred: (1) in classifying the marital home as a marital asset, and (2) in failing address Constance’s alternative request for alimony in her motion to amend the final judgment. Finding no error, we affirm.
FACTS
¶ 2. Constance and Stephen married on August 15,1998. The couple had one child together, Devin-Sims, born on August 28, 1998. The family resided together in Collins, Mississippi, until Constance and Stephen separated in January 2011. Around the time of separation, Stephen pled guilty to six counts of embezzlement. He served eighteen months in the custody of the Mississippi Department of Corrections (MDOC) before being paroled to the Hinds County Restitution Center. Constance and Devin continued to live in the home.
¶ 3. Constance filed for divorce on February 7, 2012, on the grounds of felony incarceration and desertion. Miss.Code Ann. § 93-5-1 (Supp.2013). Constance also requested physical custody of Devin, child support, exclusive ownership of the home, equitable distribution of the marital assets, and alimony.
¶ 4. The court held a hearing on September 17, 2012. Constance testified that she had lived in the home nearly thirty years. Stephen moved into the home after they married in 1998. Constance stated that, prior to 1997, the deed to the home listed both of her parents’ names with a right of survivorship. In 1997, Constance’s father transferred his half of the deed to her. Constance’s mother died in 2001, which resulted in her part of the deed transferring back to Constance’s father based on the right of survivorship. Later that year, Constance’s father and Stephen signed a deed quitclaiming their interest in the home to Constance. This was the only deed admitted into evidence at the hearing.
¶ 5. Constance testified that the home was paid for when the quitclaim deed was signed. Near the time Constance obtained the deed, she and Stephen used the home as collateral to obtain a loan from Central Sunbelt Federal Union. Both Constance and Stephen were listed as the loan borrowers. Stephen testified that he paid the monthly mortgage of $558.99 from the time the loan was obtained to the time he was incarcerated.
*940 ¶ 6. Stephen was a resident at the Hinds County Restitution Center at the time of the hearing. He testified that the MDOC prohibited him from seeking employment for the time being, due to his poor health conditions. Constance testified that she had been doing several different part-time jobs, but was struggling to find work. She also stated that she filed for disability six weeks before the hearing.
¶ 7. In the judgement of divorce, the chancellor stated that Constance was entitled to a divorce on the ground of felony incarceration. Miss.Code Ann. § 95-3-1 (Rev.201S). In regard to the marital home, the chancellor stated the following:
The Court finds that the plaintiff owns real property, conveyed from her parents, which serves as the marital domicile of the parties and the parties’ minor child ... Said property is titled solely in the name of CONSTANCE JO SIMS[,] and Defendant, STEPHEN SIMS, quit-claimed his interest therein to [Constance] in 2001. However, because the parties jointly borrowed money with the home as collateral, which loan benefitted both parties, and because [Stephen] continued to reside at the home as the spouse of [Constance] for [ten] years after executing a quitclaim deed to [Constance] and made payments of $558.99 each month thereafter until his incarceration in satisfaction toward the mortgage taken against the property, the Court finds the marital home to be a marital asset.
¶ 8. The chancellor granted Constance exclusive use and possession of the home and her personal property within the home. In addition, the chancellor granted Constance ownership of the home, subject to an $18,000 lien in favor of Stephen no sooner than when Devin reaches twenty-one years of age. Constance was also held responsible for satisfying the remainder of the debt secured by .the home. The chancellor awarded Constance physical custody of Devin, and Stephen was ordered to pay $125 per month in child support. Constance was also awarded sole use and possession of the automobile she had shared with Stephen.
¶ 9. Constance filed a motion to amend the judgment of divorce on October 29, 2012. Constance requested the following pursuant to Mississippi Rule of Civil Procedure 52: (1) the chancellor amend the findings of fact to state that the marital home is part of Constance’s separate estate, as opposed to a marital asset; (2) in the alternative, the chancellor amend the findings of fact to address alimony; and (3) the chancellor address the assignment of the remainder of the marital debts. The chancellor issued an amended judgment of divorce, upholding his decision to classify the marital home as a marital asset. Additionally, the chancellor assigned responsibility for the listed marital debts. The chancellor did not address Constance’s alternative request for alimony.
STANDARD OF REVIEW
¶ 10. “This Court employs a limited standard of review of property division and distribution in divorce cases.” Bowen v. Bowen, 982 So.2d 385, 393 (¶ 32) (Miss.2008) (quoting Owen v. Owen, 928 So.2d 156, 160 (¶ 10) (Miss.2006)). The chancellor’s distribution of the marital assets will be affirmed as long as “it is supported by substantial credible evidence.” Id. at 394 (¶ 32). In addition, “[a]limony awards are within the chancellor’s discretion and will not be reversed by the Court on appeal absent manifest error or an abuse of discretion.” Cosentino v. Cosentino, 912 So.2d 1130, 1132 (¶ 8) (Miss.Ct.App.2005) (citing Baker v. Baker, 861 So.2d 351, 353 (¶ 10) (Miss.Ct.App.2003)).
*941 DISCUSSION
1. Marital Home
¶ 11. Marital property is defined as “any and all property acquired or accumulated during the marriage.” Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Such assets are subject to equitable distribution by the chancellor. Id. Nonmarital assets may be converted into marital assets if they are commingled with marital property or utilized for domestic or familial purposes, absent an agreement to the contrary. Heigle v. Heigle, 654 So.2d 895, 897 (Miss.1995); Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994); see also Maslowski v. Maslowski, 655 So.2d 18, 20 (Miss.1995). Further, commingled property, which has become marital property, is subject to equitable distribution. See Maslowski, 655 So.2d at 20; Heigle, 654 So.2d at 897; Johnson, 650 So.2d at 1286.
¶ 12. “An inheritance or gift made to one spouse during the marriage remains the separate property of that spouse.” Allgood v. Allgood, 62 So.3d 443, 447 (¶ 13) (Miss.Ct.App.2011) (citing Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994)). However, “[slpouses possessing separate ownership convert the property into marital property through the following actions: conversion by implied gift, family use, or commingling.” Id. (footnote omitted) (citing Yancey v. Yancey, 752 So.2d 1006, 1011 (¶ 20) (Miss.1999)).
¶ 13. The burden of proof is on the person claiming the assets to be non-marital to demonstrate their nonmarital character. A & L, Inc. v. Grantham, 747 So.2d 832, 839 (¶ 23) (Miss.1999). Constance contends that even if the parties commingled their nonmarital assets, the quitclaim deed constituted an “agreement to the contrary” that preserved the home as a nonmarital asset. Our supreme court has declared that the formal state of a title is “no longer determinative in deciding a spouse’s rights to the property.” Maslowski, 655 So.2d at 21 (citing Hemsley, 639 So.2d at 914). In addition, Constance and Stephen lived in home together for nearly ten years after the quitclaim deed was signed, using the home as collateral for a joint loan. The chancellor stated in his bench ruling that these actions resulted in the commingling of nonmarital and marital assets. After careful review of the record, we agree with the chancellor’s finding.
¶ 14. “A chancery court has authority, where equity so demands, to order a fair division of property accumulated through the joint contributions and efforts of the parties.” Brown v. Brown, 797 So.2d 253, 257 (¶ 9) (Miss.Ct.App.2001) (citing Hemsley, 639 So.2d at 915). In explaining his equitable division of the marital property, the chancellor considered Stephen’s contribution to satisfy the mortgage debt on the family home, and determined that the equitable division of the parties’ property credited Stephen for that contribution. Finding that the evidence presented in the record is consistent with the chancellor’s judgment, we affirm both the chancellor’s classification of the marital home as a marital asset and the equitable division of marital property.
2. Alimony
f 15. Constance also argues that the court erred by failing to address the issue of alimony in the amended judgment of divorce. Specifically, she claims that the court was required to make specific findings of fact and conclusions of law on her alternative request for alimony.
¶ 16. “Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, *942 where one expands, the other must recede.” Ferguson, 639 So.2d at 929. “If the equitable division of property leaves neither spouse with a deficit with respect to having sufficient resources and assets to meet his or her needs and living expenses, then no alimony award is appropriate.” Jackson v. Jackson, 114 So.3d 768, 777 (¶ 22) (Miss.Ct.App.2013) (citations omitted). Constance was awarded exclusive use and ownership of the marital home, as well as a majority of the marital assets. The chancellor’s equitable division did not leave Constance with a deficit. We agree with the chancellor that alimony was inappropriate. The question remains whether the chancellor was required to address alimony based on Constance’s request under Rule 52(a).
¶ 17. 52(a) provides:
In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specifically and state separately its conclusions of law thereon[,] and judgment shall be entered accordingly.
Our supreme court has held that “where a trial court makes general findings of fact and conclusions of law, it has complied with [Rule] 52.” Ill. Cent. R.R. Co. v. Acuff, 950 So.2d 947, 957 (¶ 35) (Miss.2006) (citing Century 21 Deep S. Props., Ltd. v. Corson, 612 So.2d 359, 367 (Miss.1992)). Here, the chancellor made general findings of fact and conclusions of law for equitable distribution. The chancellor found alimony inappropriate. As a result, specific findings of fact and conclusions of law regarding alimony were not necessary. We find that the chancellor complied with the requirements of Rule 52. This argument is without merit.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF COVINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT.