# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01105-COA

**MORGAN DAVID EWING, SR.**                                                    **APPELLANT**

**v.**

**MELANIE SHAE EWING**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/2015 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JERRY WESLEY HISAW |
| ATTORNEY FOR APPELLEE: | DAVID MARK SLOCUM JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED DIVORCE AND AWARDED WIFE FULL CUSTODY OF THE MINOR CHILDREN, PROCEEDS FROM THE SALE OF THE MARITAL HOME, $38,000 IN LUMP-SUM ALIMONY, $500 IN MONTHLY PERIODIC ALIMONY, AND $10,000 IN ATTORNEY'S FEES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART: 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., JAMES AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Morgan David Ewing Sr. and Melanie Shae Ewing were granted a divorce based on irreconcilable differences. Morgan appeals the DeSoto County Chancery Court's division of the marital estate, the alimony award, and the award of attorney's fees. This Court finds error and affirms in part and reverses and remands in part.

FACTS AND PROCEDURAL HISTORY

¶2. Morgan and Melanie were married on July 1, 2000. Four children were born of the marriage. Melanie mostly stayed home with the children while Morgan worked. They separated on January 2, 2012. On January 17, 2012, Melanie filed a petition for divorce based on habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences.

¶3. On February 22, 2012, the chancellor issued a temporary order granting Melanie custody of the children, $950 per month in child support, and sole use of the marital home. The order also granted Morgan weekend and phone visitation, and required him to maintain health insurance on the family. Further, the order required the parties to file a joint tax return and prohibited dissipation of marital assets.

¶4. After the temporary order but before the final divorce decree, Morgan lost his job and failed to make several child-support payments, which caused him to go into arrears. During this time, Morgan took out a loan against his 401(k), then eventually cashed out his 401(k), valued at around $48,000. As a result of his unsteady employment and financial situation, Morgan filed for bankruptcy in 2014.

¶5. The divorce proceedings extended over several years. Eventually, Melanie and Morgan agreed to divorce on the ground of irreconcilable differences. The parties agreed that Melanie would retain sole custody of the children, and they stipulated to a visitation schedule. They requested that the chancellor settle the matters of property distribution, child support, and alimony.

¶6. On February 18, 2015, the chancellor conducted a bench trial on the remaining issues.

2

On March 16, 2015, the chancellor entered his judgment granting the divorce and resolving the disputed issues. The chancellor ordered Morgan to pay $950 per month in child support, $500 per month in permanent alimony, $38,000 in lump-sum alimony to be paid at monthly $1,000 increments until satisfied, $10,000 in Melanie's attorney's fees to be paid monthly in $500 increments until satisfied, and two-thirds of all unpaid medical expenses for the children. The judgment was finalized on April 13, 2015.

¶7. Subsequently, on April 20, 2015, Morgan filed a motion for reconsideration or, in the alternative, a new trial. Morgan primarily sought a reduction in the awards of child support, alimony, and attorney's fees. The chancellor granted Morgan's motion in part by reducing the child support to $708.36 per month and giving credit for $3,050 in paid child support. All other requests were denied.

¶8. Morgan timely appealed the denial of his posttrial motion. On appeal, he argues that the chancellor erred in (1) dividing the marital estate, (2) granting Melanie periodic alimony, and (3) awarding attorney's fees to Melanie.

STANDARD OF REVIEW

¶9. In domestic-relations cases, "[t]his Court will not disturb a chancellor's judgment when [it is] supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or [applied] an erroneous legal standard." *Rolison v. Rolison*, 105 So. 3d 1136, 1137 (¶4) (Miss. Ct. App. 2012) (citation omitted). "If the chancellor's findings are supported by substantial evidence, then we will affirm." *Id.* (citation omitted). Questions of law, however, are reviewed de novo. *Price v. Price*, 22 So.

3d 331, 332 (¶8) (Miss. Ct. App. 2009) (citation omitted).

ANALYSIS

I. *Whether the chancellor erred in dividing the marital estate.*

¶10. Morgan initially disputes the chancellor's division of the marital estate when he awarded $38,000 in lump-sum alimony to Melanie. Morgan contends that the chancellor failed to conduct a full analysis under the *Ferguson*[1] factors in dividing the marital property. Morgan also states that the chancellor neither established a line of demarcation determining when the parties stopped accumulating marital assets nor classified the property as marital or nonmarital. By extension, Morgan argues the chancellor erred in awarding lump-sum alimony or, in the alternative, erroneously calculated the amount Melanie should receive.

¶11. "[W]hen dividing marital property, 'chancellors are directed to (1) classify the parties' assets as marital or separate; (2) determine the value of those assets; (3) divide the marital estate equitably based upon the factors set forth in *Ferguson*; and (4) consider the appropriateness of alimony if either party is left with a deficiency.'" *Roberts v. Roberts*, 135 So. 3d 935, 940 (¶13) (Miss. Ct. App. 2014) (quoting *Dickerson v. Dickerson*, 34 So. 3d 637, 643-44 (¶23) (Miss. Ct. App. 2010)).

A. *The Classification and Valuation of Assets*

¶12. "In dividing the property of the divorcing couple, the chancellor must first classify their assets and liabilities as belonging to the marriage, to the husband, or to the wife." *Smith v. Smith*, 856 So. 2d 717, 719 (¶8) (Miss. Ct. App. 2003) (citing *Hemsley v. Hemsley*, 639

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

So. 2d 909, 914 (Miss. 1994)). Morgan argues the chancellor erred when he did not classify the parties' property as marital and nonmarital property. Further, the chancellor, according to Morgan, did not determine a line of demarcation determining when the parties stopped accumulating marital assets.

¶13. "[W]hen equitably dividing marital property upon divorce, the date of valuation is necessarily within the discretion of the chancellor." *Hensarling v. Hensarling*, 824 So. 2d 583, 591 (¶25) (Miss. 2002) (quoting *MacDonald v. MacDonald*, 698 So. 2d 1079, 1086 (¶35) (Miss. 1997)). Melanie obtained a temporary order on February 22, 2012, which awarded her sole temporary custody, use of the marital home, and use of her vehicle. The temporary order also required Morgan to pay $950 in monthly child support, but did not award Melanie separate maintenance.

¶14. Morgan argues the time of the demarcation should have been at the point of the temporary order. "A temporary order may be considered by the chancellor to be a line of demarcation between marital and separate property[.]" *Collins v. Collins*, 112 So. 3d 428, 432 (¶11) (Miss. 2013) (citing *Cuccia v. Cuccia*, 90 So. 3d 1228, 1233 (¶8) (Miss 2012)). Therefore, the chancellor could have designated either the date of the temporary order or the date of the divorce as the time for demarcation. Though the chancellor implicitly held the date of demarcation as the date of the divorce, the chancellor erred when he failed to explicitly declare either date as the line of demarcation.

¶15. The *Collins* court held that chancellors should declare a line of demarcation in their findings. *Id.* at 432-33 (¶13). In *Collins*, the Mississippi Supreme Court found that the

5

chancellor did not make a finding as to the line of demarcation, but because the opinion alluded to the date and the parties did not challenge the date, the supreme court did not remand the case on this issue. *Id.* at 432 (¶13). Further, the *Collins* court cautioned that had the date been disputed or unclear in the judgment, the case would have been remanded. *Id.* Here, Morgan and Melanie dispute the date for demarcation. Thus, this issue is remanded for a finding on the date of demarcation.

¶16. Morgan also argues that the chancellor erroneously failed to classify the assets of the parties as either marital or nonmarital. Morgan asserts that his 401(k) appreciated in value over the time of separation, and the appreciation should have been considered separate property. Unlike with demarcation, the chancellor stated that there was no testimony presented as to any separate property. Further, the chancellor specifically determined what he considered as marital property, and assigned values to each of the assets. Therefore, on remand, the chancellor should determine the line of demarcation and whether the parties accumulated any separate property.

### B. *The* Ferguson *Factors*

¶17. Morgan further contends that the chancellor failed to adequately analyze the *Ferguson* factors when he determined the distribution of marital property. After classification and valuation, a chancellor must equitably divide the marital property in accordance with the factors dictated in *Ferguson*. The factors are:

> (1) Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows: (a) [d]irect or indirect economic contribution to the acquisition of the property; (b) [c]ontribution to the stability and harmony of the marital and family relationships as measured

6

by quality, quantity of time spent on family duties and duration of the marriage; and (c) [c]ontribution to the education, training[,] or other accomplishment bearing on the earning power of the spouse accumulating the assets[;]

(2) The degree to which each spouse has expended, withdrawn[,] or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree[,] or otherwise[;]

(3) The market value and the emotional value of the assets subject to distribution[;]

(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

(7) The needs of the parties for financial security with due regard to the combination of assets, income[,] and earning capacity; and

(8) Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

¶18.    The chancellor stated that he looked to the *Ferguson* factors when determining the distribution.  The chancellor, however, only made a specific finding in the record regarding the first factor when he found that Morgan, as the financial provider, and Melanie, as the domestic provider, contributed equally to the accumulation of the marital assets.  The chancellor determined that because the two parties contributed equally to the accumulation of assets, they should be divided equally.  Morgan argues this finding is insufficient to

7

support the division of marital property. This Court agrees.

¶19. "While chancellors need not make findings as to each and every factor set forth in *Ferguson*, they cannot simply mention the guidelines and state they are following them and applying them to the facts of the case." *Lee v. Lee*, 78 So. 3d 326, 329 (¶10) (Miss. 2012) (citing *Weathersby v. Weathersby*, 693 So. 2d 1348, 1354 (Miss. 1997)); *Ferguson*, 639 So. 2d at 928) (quotation marks omitted). "The failure to make findings of fact and conclusions of law is 'manifest error requiring reversal and remand.'" *Id.* (quoting *Sandlin v. Sandlin*, 699 So. 2d 1198, 1204 (Miss. 1997)).

¶20. As previously stated, the chancellor determined each party's contribution to the marital property, but did not specifically apply the remaining factors. Melanie argues that the chancellor found that several of the other *Ferguson* factors applied, such as the dissipation of assets and the tax-consequences factor. Arguably, the chancellor did address the dissipation of assets when he stated that Morgan wrongfully cashed out his 401(k) account. While a chancellor is not required to fully analyze every *Ferguson* factor, this is not a sufficient finding to support the distribution of the marital property.

¶21. Further, the chancellor assessed all of the marital debt to Morgan. "Debts acquired during the course of the marriage are also subject to equitable distribution." *Carter v. Carter*, 98 So. 3d 1109, 1114 (¶15) (Miss. Ct. App. 2012) (citation omitted). The chancellor likewise failed to make a finding regarding the distribution of the marital debt. This failure constitutes reversible error, and this Court remands this issue for a proper analysis under *Ferguson*.

        C.     *Lump-Sum-Alimony Award*

¶22. Morgan next argues that the chancellor erred when he awarded Melanie $38,000 in lump-sum alimony. Under the property distribution, Morgan would receive $53,500, and Melanie would receive $15,600.80. To equalize the distribution, the chancellor awarded Melanie $38,000 in lump-sum alimony to bring her total distribution to $53,600.80. As such, Morgan contends the chancellor failed to do an appropriate analysis in making the award and, even if an award was proper, the amount was manifestly wrong.

¶23. An award of lump-sum alimony must be considered under the *Ferguson* or *Armstrong*[2] factors depending on the purpose of the award. *Davenport v. Davenport*, 156 So. 3d 231, 240 (¶30) (Miss. 2014). "If lump-sum alimony is awarded as a mechanism to equitably divide the marital assets, then chancellors may conduct their analysis under the *Ferguson* factors." *Id.* at 241 (¶34) (citing *Haney v. Haney*, 907 So. 2d 948, 955 (¶26) (Miss. 2005)). "[I]f the alimony, lump-sum or otherwise, is awarded subsequent to the equitable distribution of the marital assets, then chancellors must conduct their analysis under the *Armstrong* factors." *Id.* (citing *Lauro v. Lauro*, 847 So. 2d 843, 848 (¶13) (Miss. 2003)).

¶24. The chancellor awarded lump-sum alimony to equalize the property distribution. In his judgment, the chancellor stated that the lump-sum-alimony award was "to even the division of marital property." Therefore, an analysis of the *Ferguson* factors was required. As previously discussed, the chancellor did not complete a sufficient *Ferguson* analysis, and the failure to do so is reversible error.

¶25. The chancellor committed error when he failed to properly distribute the marital

---

[2] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

9

property and award lump-sum alimony. Therefore, this Court reverses this portion of the chancellor's judgment and remands the case for a finding in accordance with the *Ferguson* factors to determine the distribution of all marital assets and debts, as well as to determine the need and proper amount of any lump-sum-alimony award, if necessary.[3]

II.     *Whether the chancellor properly awarded periodic alimony.*

¶26.    Morgan next contends that the chancellor erroneously awarded Melanie $500 per month in periodic alimony. "[P]eriodic alimony should only be considered if the chancellor determines that a spouse has suffered a disparity of income and standard of living following the equitable division of the marital assets." *George v. George*, 22 So. 3d 424, 428 (¶6) (Miss. Ct. App. 2009) (citation omitted). A chancellor must determine an award of alimony based on the following factors provided in *Armstrong*:

1. The income and expenses of the parties;

2. The health and earning capacities of the parties;

3. The needs of each party;

4. The obligations and assets of each party;

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require

---

[3] We also note that although the chancellor ordered Morgan to pay "$38,000.00 as lump sum alimony to even the division of marital property," that was not the effect of the order. The chancellor's order awarded Morgan marital property worth $53,500 and Melanie marital property worth $15,600.80. Therefore, the award of lump-sum alimony essentially reversed the parties' positions, leaving Morgan with $15,500 and Melanie with $53,600.80. This mathematical error would also require reversal. *See Hearn v. Hearn*, 191 So. 3d 129, 132-33 (¶¶11-15) (Miss. Ct. App. 2016) (citing *Jackson v. Jackson*, 172 So. 3d 179, 180-82 (¶¶5-8) (Miss. 2015)).

that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

8. The standard of living of the parties, both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; or

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Armstrong*, 618 So. 2d at 1280.

¶27. The chancellor made specific findings as to several of the *Armstrong* factors. The chancellor found that Morgan made $43,200 per year, compared to Melanie's $1,050 a month before child support. As to the second factor, the parties were in good health, and Morgan enjoyed a higher earning capacity. Further, the chancellor found Melanie had a greater need as the sole custodian of the children, Morgan had reduced his obligations through bankruptcy, and the marriage had lasted twelve years. The chancellor also found that Morgan had dissipated his 401(k). Lastly, the chancellor addressed the tax consequences of alimony. Though the chancellor did not address the age of the parties or their standards of living, these omissions do not invalidate the chancellor's findings under *Armstrong*.

¶28. The income disparity between Morgan and Melanie is an important factor in awarding periodic alimony. *See Davis v. Davis*, 832 So. 2d 492, 499 (¶23) (Miss. 2002) ("A significant disparity in earning capacity is a major factor in the determination of a periodic

alimony award."). This finding, coupled with the other *Armstrong* factors, weighs in favor of the chancellor's award of periodic alimony.

¶29.   But a chancellor must not only determine the appropriateness of a periodic-alimony award, but also decide on the amount of the award. "In determining the amount of support payable to the wife, a chancellor must consider 'not only reasonable needs of [the] wife but also [the] right of [the] husband to lead as normal a life as reasonably possible with a decent standard of living.'" *Davis*, 832 So. 2d at 497 (¶19) (quoting *Massey v. Massey*, 475 So. 2d 802, 803 (Miss. 1985)). Here, the chancellor did not take Morgan's standard of living into account. While the $500 monthly payments alone might be considered reasonable, the chancellor did not assess the award in relation to Morgan's payments for child support, lump-sum alimony, and attorney's fees. Thus, the amount of the award of periodic alimony should be considered in light of the amounts of the other payments on remand.

¶30.   The chancellor made a sufficient finding in the record under the *Armstrong* factors to support an award of periodic alimony. However, the chancellor failed to consider the reasonable needs of Morgan and Melanie when determining the amount of the award. Therefore, this issue is affirmed as to the finding of a need for periodic alimony, but remanded for consideration of the amount of the award. The chancellor, on remand, should consider Morgan's other financial obligations and his ability to maintain a decent standard of living.

   III.   *Whether the chancellor erred in awarding attorney's fees.*

¶31.   As a final point of contention, Morgan argues that the chancellor erred in awarding

Melanie $10,000 in attorney's fees. Morgan maintains that the chancellor failed to consider his ability to pay Melanie's attorney's fees and Melanie's ability to pay her own attorney's fees.

¶32. "An award of attorney's fees in domestic cases is largely a matter entrusted to the sound discretion of the trial court." *Lauro v. Lauro*, 924 So. 2d 584, 591 (¶29) (Miss. Ct. App. 2006) (citations omitted). "Unless the chancellor is manifestly wrong, his decision regarding attorney['s] fees will not be disturbed on appeal." *Id.* (citing *Bredemeier v. Jackson*, 689 So. 2d 770, 778 (Miss. 1997)).

¶33. "Generally, unless the party requesting attorney['s] fees can establish the inability to pay, such fees should not be awarded." *Bredemeier*, 689 So. 2d at 778 (citing *Dunn v. Dunn*, 609 So. 2d 1277, 1287 (Miss. 1992)). In order to determine the amount of attorney's fees, a chancellor must look to the factors enumerated in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

¶34. The court in *McKee* stated: "[T]he allowance of attorney[']s fees should be only in such amount as will compensate for the services rendered. It must be fair and just to all concerned after it has been determined that the legal work being compensated was reasonably required and necessary." *Id.* The specific factors include

> the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

*Id.*

13

¶35. The chancellor stated that "[a]ttorney's fees, according to the *McKee* factors[,] are necessary in this case, and $10,000.00 is [a] reasonable [amount of] attorney's fees to be paid at the rate of $500.00 per month until paid." The chancellor made no specific findings regarding the individual *McKee* factors. However, the lack of a factor-by-factor analysis under *McKee* does not necessarily require reversal. *See A&L Inc. v. Grantham*, 747 So. 2d 832, 845 (¶61) (Miss. 1999) ("Reversal is warranted only where the failure to make sufficient findings of fact and conclusions of law constitutes manifest error.").

¶36. Regardless of any specific findings under *McKee*, the chancellor must determine whether Melanie was unable to pay her attorney's fees.

> [W]here the record shows an inability to pay and a disparity in the relative financial positions of the parties, there is no error in awarding attorney's fees. The supreme court has also held that consideration of the relative worth of the parties, standing alone, is insufficient. The record must reflect the requesting spouse's inability to pay his or her own attorney's fees.

*Owen v. Owen*, 22 So. 3d 386, 393 (¶25) (Miss. Ct. App. 2009) (quoting *Bates v. Bates*, 755 So. 2d 478, 482 (¶11) (Miss. Ct. App. 1999)). The chancellor, nonetheless, failed to make such a finding in the record.

¶37. Melanie testified that she incurred nearly $11,808.57 in attorney's fees due to Morgan's contempt[4] and extended litigation over three years. Melanie also testified that she could not pay her attorney's fees, but she provided no further details. The record additionally

---

[4] While the chancellor found Morgan in contempt, he did not appear to assess the attorney's fee award based on the contempt. Rather, the chancellor explicitly stated he awarded attorney's fees using the *McKee* factors, which are not required when attorney's fees are awarded based on a party's contempt. *See Huseth v. Huseth*, 135 So. 2d 846, 860 (¶45) (Miss. 2014).

14

indicates that Melanie's monthly income before child support and alimony was approximately $1,050, but there was no indication of her expenses that would result in her inability to pay. Without a specific finding as to Melanie's financial situation or her inability to pay her attorney's fees, the chancellor's award was improper.

¶38. Further, any property and alimony that Melanie receives after this case is remanded should be considered in light of her ability or inability to pay her attorney's fees. *See Hammers v. Hammers*, 890 So. 2d 944, 958 (¶55) (Miss. Ct. App. 2004) (finding ability to pay after considering the equitable distribution of property and alimony award). Therefore, the chancellor must make specific findings as to Melanie's financial situation, and her ability to pay her attorney's fees after the equitable distribution of marital property and alimony awards are decided. *See Ladner v. Ladner*, 49 So. 3d 669, 673 (¶17) (Miss. Ct. App. 2010) ("On remand, the chancery court must examine [the wife's] financial situation and make specific findings as to [the wife's] ability to pay her attorney's fees.") This issue is reversed and remanded.

¶39. Because the chancellor did not make the appropriate findings under the *Ferguson* factors for the distribution of marital property and the award of lump-sum alimony as part of that distribution, this Court reverses and remands this case for findings consistent with this opinion. This Court also reverses and remands this case for a finding under the *McKee* factors of an attorney's fee award amount, if appropriate. Lastly, this Court affirms the chancellor's assessment of periodic alimony, but remands the award for a determination of the proper amount, taking into account Morgan's other financial obligations and his ability

to maintain a decent standard of living.

¶40. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.**

**LEE, C.J., BARNES, ISHEE, FAIR, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**