# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00210-COA

JOHN DAVID FOREMAN                                                          APPELLANT

v.

KRISTY LYNN FOREMAN                                                          APPELLEE

DATE OF JUDGMENT:        11/3/2015
TRIAL JUDGE:             HON. PATRICIA D. WISE
COURT FROM WHICH APPEALED: HINDS COUNTY CHANCERY COURT,
                         FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT: STEVEN ALFRED KOHNKE
                         TIMOTHY KEVIN BYRNE
ATTORNEY FOR APPELLEE:   SHARON PATTERSON THIBODEAUX
NATURE OF THE CASE:      CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION: GRANTED DIVORCE AND AWARDED
                         APPELLEE FULL CUSTODY OF THE
                         MINOR CHILD; $700 IN MONTHLY CHILD
                         SUPPORT; $3,300 IN MONTHLY PERIODIC
                         ALIMONY; $40,000 OF APPELLANT'S
                         RETIREMENT; EXCLUSIVE USE AND
                         POSSESSION OF THE MARITAL HOME,
                         HOUSEHOLD GOODS, AND 2007 FORD
                         EXPEDITION; AND $3,500 IN
                         ATTORNEY'S FEES
DISPOSITION:             AFFIRMED IN PART; REVERSED AND
                         REMANDED IN PART: 07/18/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

  **BEFORE GRIFFIS, P.J., FAIR AND WILSON, JJ.**

  **GRIFFIS, P.J., FOR THE COURT:**

¶1.    Kristy Lynn Foreman was granted a divorce from John David Foreman based on

uncondoned adultery.  John appeals the chancellor's distribution of the marital estate, the

alimony award, and the child-support determination.

## FACTS AND PROCEDURAL HISTORY

¶2. John and Kristy were married on July 19, 1996. They had one child. After the child's birth, Kristy primarily stayed home while John worked. John's job required him to spend lengthy periods of time in China. While in China, John had an extramarital affair and fathered a child.

¶3. John and Kristy separated around October 2012, and John later filed for divorce based on irreconcilable differences. Kristy counterclaimed for divorce on the grounds of habitual cruel and inhuman treatment, uncondoned adultery, and desertion. In February 2013, Kristy filed for separate maintenance. The chancellor issued a separate-maintenance order[1] granting Kristy sole legal and physical custody of the minor child and $3,500 per month to maintain the mortgage and pay other household bills.

¶4. On January 25, 2016, the chancellor entered a final judgment of divorce based on uncondoned adultery. The chancellor awarded physical custody of the child to Kristy and divided the marital property. The property division included the marital home, a timeshare property, vehicles, and John's retirement account. The chancellor ordered John to pay $700 per month in child support, $3,300 per month in periodic alimony, and $3,500 of Kristy's attorney's fees. The chancellor also ordered that John provide twenty-four consecutive months of health insurance for Kristy and assume all responsibility for the child's dance and

---

[1] The appellate record does not contain a copy of the separate-maintenance order. This information came from the transcript where both parties, their attorneys, and the chancellor repeatedly referenced the details of the order.

2

choir expenses. It is from this judgment that John now appeals.

## STANDARD OF REVIEW

¶5. "In domestic-relations cases, '[t]his Court will not disturb a chancellor's judgment when [it is] supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard." *Ewing v. Ewing*, 203 So. 3d 707, 711 (¶9) (Miss. Ct. App. 2016) (citation omitted). "If the chancellor's findings are supported by substantial evidence, then we will affirm." *Id.* (citation omitted). "Questions of law, however, are reviewed de novo." *Id.* (citation omitted).

## ANALYSIS

*I.      Whether the chancellor erred in the division of the marital estate.*

¶6. First, John appeals the chancellor's division of the marital property. He claims that the chancellor did not classify the property as marital or nonmarital property prior to distribution. He further contends that the chancellor failed to conduct an analysis under the *Ferguson v. Ferguson,* 639 So. 2d 921, 928 (Miss. 1994), factors when dividing the marital property. John also argues that the chancellor's calculation of alimony was erroneous.

¶7. "When dividing marital property, chancellors are directed to (1) classify the parties' assets as marital or separate; (2) determine the value of those assets; (3) divide the marital estate equitably based upon the factors set forth in *Ferguson*; and (4) consider the appropriateness of alimony if either party is left with a deficiency." *Ewing*, 203 So. 3d at 711 (¶11) (citation omitted).

3

## A. Classification of Assets

¶8. John contends that the chancellor operated under the presumption that all of the property at issue was marital property. He argues that the chancellor erred when she failed to classify the property as marital before making a distribution. Kristy contends that the chancellor was correct in her determination because all of the assets were in fact marital. She asserts that, during the trial, neither party disputed whether the assets were marital or nonmarital.

¶9. "In dividing the property of the divorcing couple, the chancellor must first classify their assets and liabilities as belonging to the marriage, to the husband, or to the wife." *Smith v. Smith*, 856 So. 2d 717, 719 (¶8) (Miss. Ct. App. 2003) (citing *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994)). "Once this is done, the chancellor must [then] look to the factors set out by the supreme court in *Ferguson*. . . ." *Id.* "The *Ferguson* factors are used to determine how to divide the marital assets between the divorcing couple." *Id.*

¶10. From the bench, the chancellor did not clearly classify the property as marital or nonmarital. "However, a failure to classify property does not automatically result in reversible error if the division of property is fair." *Branch v. Branch*, 174 So. 3d 932, 944 (¶45) (Miss. Ct. App. 2015) (citation omitted). Here, the chancellor heard testimony, in which both John and Kristy stated that they jointly owned the home, timeshare, and vehicles. It appears the chancellor relied on this testimony; however, this is not completely clear from the record. We do not have the benefit of the chancellor's analysis as to how John's retirement account was a marital asset. As a result, we must reverse the judgment and

4

remand for a clear classification of the marital property.

### B. Ferguson *Factors*

¶11. John argues that the chancellor failed to adequately analyze the *Ferguson* factors when distributing the marital property. He further contends that the chancellor made no findings of fact or conclusions of law to accompany the property distribution. He mainly asserts error in the chancellor's division of the marital residence, timeshare, and his retirement account.

¶12. After classifying property as marital, a chancellor must equitably divide the property in accordance with the factors prescribed in *Ferguson*. The factors are:

> (1) Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows: (a) [d]irect or indirect economic contribution to the acquisition of the property; (b) [c]ontribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and (c) [c]ontribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets[;]
>
> (2) The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise[;]
>
> (3) The market value and the emotional value of the assets subject to distribution[;]
>
> (4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
>
> (5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
>
> (6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future

5

friction between the parties;

(7) The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and

(8) Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

¶13. "In *Ferguson*, [the supreme court] established guidelines [that] chancellors must follow when dividing marital property." *Lee v. Lee*, 78 So. 3d 326, 329 (¶10) (Miss. 2012). Additionally, in applying the factors, "chancellors must support their decisions with findings of fact and conclusions of law." *Dickerson v. Dickerson*, 34 So. 3d 637, 644 (¶24) (Miss. Ct. App. 2010) (citation omitted). "While chancellors need not make findings as to each and every factor set forth in *Ferguson*," more is required than vague references to factors with no indication of how each was applied. *Lee*, 78 So. 3d at 329 ¶10. "The failure to make findings of fact and conclusions of law is manifest error requiring reversal and remand." *Id.*

¶14. Kristy concedes that the *Ferguson* factors must be used when making a division of the marital property. However, she asserts an application of the factors was not necessary because neither party disputed any asset as nonmarital property. Further, she argues that the chancellor did not actually divide the marital home or the timeshare. Instead, Kristy asserts there was no property division; while she received exclusive use and possession of the marital home, the property remains a jointly owned asset. Kristy cannot sell the home without John's consent, nor can John sell the timeshare without ensuring that Kristy receives fifty percent of the net proceeds. Kristy also contends that she was entitled to fifty percent, rather than forty-six percent, of John's retirement account because the account was

6

accumulated entirely during the marriage.

¶15.   Here, the chancellor did not clearly specify each party's contribution to the marital property.  From the bench, the chancellor made a vague reference to the difference in John's and Kristy's income statuses.  This reference suggests that the chancellor sought to establish that John was the financial provider, and Kristy, as the domestic provider, was entitled to maintain the lifestyle she had become accustomed to living. However, the chancellor made no specific findings of fact or conclusions of law to support this inference.

¶16.   Further, the chancellor made no reference to the *Ferguson* factors from the bench or in the final judgment of divorce.  John argues that the property division was inequitable because the chancellor failed to support the division of the marital property with legal authority.  We agree, and reverse and remand for an application of the *Ferguson* factors.

II.   *Whether the chancellor's grant of periodic alimony was proper.*

¶17.   John next argues that the chancellor erroneously awarded Kristy $3,300 per month in periodic alimony.  He asserts the chancellor failed to identify the precise type and duration of the support.  Further, John contends that the chancellor did not consider his actual income or expenses at the time of trial.  He claims that the chancellor's miscalculation of alimony placed numerous financial burdens on him.

¶18.    Pursuant to the separate-maintenance order John paid $3,300 per month to Kristy for the mortgage, utilities, and other related bills.  At the trial, the chancellor ordered that John continue to pay $3,300 for the same expenses.  The chancellor declined to characterize the monthly support as alimony and instead explained her decision as follows:

7

The reason the Court specifically is ordering – it's not necessarily in the form of spouse's support, but that's what it equates to because of the difference of income status of the parties and the fact that that's the position, according to the testimony, that they maintained prior to the separation. Of the [$]3,300 would be the utility expenses and all the expenses associated with everything else. Okay?

¶19. The chancellor appeared reluctant to declare the $3,300-per-month payment to Kristy as alimony.[2] However, the chancellor pointed out that the award was made because of the difference in the income status of the parties. Thus, we characterize the grant as periodic alimony.

¶20. "The chancellor has broad discretion in alimony cases." *Mamiaro v. Mamiaro*, 179 So. 3d 51, 54 (¶13) (Miss. Ct. App. 2015) (citation omitted). "Appellate courts need only to determine if the chancellor's decision was supported by credible evidence." *Id.* "[P]eriodic alimony should only be considered if the chancellor determines that a spouse has suffered a disparity of income and standard of living following the equitable division of the marital assets." *Ewing*, 203 So. 3d at 715 (¶26) (citation omitted).

¶21. The chancellor must consider an award of alimony based on the following factors provided in *Armstrong*:

(1) The income and expenses of the parties;

(2) The health and earning capacities of the parties;

(3) The needs of each party;

(4) The obligations and assets of each party;

---

[2] At trial, the chancellor also stated that when the parties' child reached the age of twenty-one, the $3,300 payment would be reduced by the amount of the mortgage. However, the final judgment did not provide for such a reduction.

8

(5) The length of the marriage;

(6) The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

(7) The age of the parties;

(8) The standard of living of the parties, both during the marriage and at the time of the support determination;

(9) The tax consequences of the spousal support order;

(10) Fault or misconduct;

(11) Wasteful dissipation of assets by either party; or

(12) Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

¶22. While the chancellor made no specific findings as to the *Armstrong* factors, it is apparent that she relied loosely on several of the factors. The chancellor made brief references to the income disparity between the parties and to Kristy's standard of living. However, the chancellor failed to make any specific findings as to either party's income. The chancellor also made no mention of either party's financial statements or obligations. Thus, it is difficult to ascertain the factors taken into consideration when granting the alimony.

¶23. John contends that the chancellor either based the alimony payment on his previous salary or that she failed to consider his financial burdens. He claims that just prior to the trial he was demoted at work, which drastically reduced his income. Prior to the demotion, John

9

received a base salary of $99,199.92 and a $300-per-day per diem when he worked in China.[3]

After the loss of management status, John provided a financial statement and pay stubs, which reflected the loss of his bonus pay. He argues that the chancellor did not consider his financial burdens as provided in his financial statement. John also contends that the chancellor failed to apply the *Armstrong* factors when she ordered him to pay $3,300 in alimony and $700 in child support; provide two years of health insurance for Kristy; and take sole responsibility for the child's dance and choir expenses, which were capped at $4,500 per year.

¶24. While the chancellor did not specifically determine that the monthly payment was periodic alimony, the record indicates the grant of $3,300 amounts to the equivalent of such. Again, this is evinced by the chancellor's notation of the income disparity between the parties and reference to Kristy's standard of living. The chancellor also ordered that John continue to pay the mortgage until the child reaches the age of twenty-one. This indicates that the alimony award would eventually be reduced by the cost of the monthly mortgage. These factors indicate that the chancellor made a grant of alimony without fully applying *Armstrong*.

¶25. "In determining the amount of support payable to the wife, a chancellor must consider 'not only reasonable needs of wife but also [the] right of husband to lead as normal a life as reasonably possible with a decent standard of living.'" *Layton v. Layton*, 181 So. 3d 275,

---

[3] John testified that prior to being demoted at work his gross income for 2012 was approximately $150,000. In both 2012 and 2013, respectively, John's gross income was approximately $170,000 each year.

293 (¶63) (Miss. Ct. App. 2015) (quoting *Massey v. Massey*, 475 So. 2d 802, 803 (Miss. 1985)). Here, it appears the chancellor did not take John's standard of living into account. While John's earnings far exceeded Kristy's income, the $3,300 monthly payments were not reasonable. There is no evidence in the record that the chancellor assessed the award in relation to John's payments for child support, Kristy's health insurance and attorney's fees,[4] and the child's dance and choir expenses. Thus, on remand, an award of alimony should be considered in light of John's other payments.

¶26. "Because of the uncertainty regarding the husband's income, [this Court has previously] vacated and remanded the alimony award for the chancellor to make more detailed findings of fact regarding the *Armstrong* factors." *Seghini v. Seghini*, 42 So. 3d 635, 641 (¶17) (Miss. Ct. App. 2010) Here, the chancellor made insufficient findings in the record and failed to adequately discuss the *Armstrong* factors. Most importantly, while the chancellor made clear there were differences in John's and Kristy's incomes, she entered no findings of fact or conclusions of law regarding the income considerations. Further, the chancellor failed to discuss the reasonable needs of both John and Kristy when determining the amount of the award. Therefore, this issue is reversed as to the indirect finding of alimony in the amount of $3,300. The chancellor, on remand, should specify the type of alimony, apply the *Armstrong* factors, and consider John's other financial obligations along with his ability to maintain a decent standard of living.

    III.    *Whether the chancellor's child-support award complies with*

---

[4] The chancellor ordered that John maintain Kristy's medical insurance for twenty-four months and also pay $3,500 of her legal fees.

11

*Mississippi Code Annotated section 43-19-101 (Rev. 2015).*

¶27.    John argues that the chancellor did not properly calculate the child-support payment, which resulted in an excessive award. He further contends that the chancellor made no findings of fact to support deviating from the guidelines set forth in Mississippi Code Annotated section 43-19-101. He argues that the $700-per-month child-support payment and the $4,500 in annual support for the child's dance and choir expenses have a cumulative effect. He contends there was insufficient consideration of his income and financial capacity to meet these child-support obligations.

¶28.    Kristy argues that the "child support guidelines are mere guidelines and do not control the chancellor's award of child support." *McEachern v. McEachern*, 605 So. 2d 809, 814 (Miss. 1992). Kristy applies the statutory calculations to the adjusted gross income (AGI) of John's base salary, and she asserts that the child-support award of $700 was actually below the statutory-requirement amount of $1,137.37.[5] This finding suggests that the chancellor considered other factors, such as the child's health-insurance needs and the dance and choir expenses.

¶29.    This Court has held "that without an express finding of fact as to the payor's income, 'it cannot be said that the [child-support] guidelines were either followed or not followed.'"

--------

[5] Kristy applied the child-support guidelines as set forth in section 43-19-101. She calculated John's year-to-date income, which included monies received prior to John's demotion. She relied on gross earnings totaling $139,080.46. From this amount she subtracted the "nondiscretionary taxes" and came up with an AGI of $96,974.86. She then reduced the AGI by fourteen percent, which is the applicable percentage when calculating child support for one child. Kristy came up with an annual child-support payment for $13,576.48, or $1,131.37 per month.

*Seghini*, 42 So. 3d at 641 (¶17) (quoting *Gray v. Gray* 745 So. 2d. 234, 237 (¶14) (Miss. 1999). John asserts that the chancellor likely relied upon his income as provided in the separate-maintenance order instead of his actual base salary at the time of trial. John testified that he had recently been demoted at work, which resulted in a substantial decrease to his income. As proof of this change in income, John submitted into evidence his last two pay stubs. The record does not indicate which documentation the chancellor relied upon when calculating the child-support award. Therefore, we conclude that the chancellor failed to make an express finding of fact as to John's income.

¶30. This issue is affirmed as to the finding that child support is warranted. But the chancellor, on remand, should make an express finding with regard to John's current income. The chancellor should also consider every aspect of the child support, including the maintenance of health insurance for the child, dance and choir expenses, and John's other financial obligations.

¶31. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**ISHEE, WILSON AND GREENLEE, JJ., CONCUR. FAIR, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., BARNES AND CARLTON, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., AND WESTBROOKS, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**