## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00522-COA

RAMONA BAKER                                                                 APPELLANT

v.

NAKIA BAKER                                                                     APPELLEE

DATE OF JUDGMENT:            03/04/2016
TRIAL JUDGE:                HON. JANE R. WEATHERSBY
COURT FROM WHICH APPEALED:   WASHINGTON COUNTY CHANCERY
                            COURT
ATTORNEY FOR APPELLANT:     BRANDON ISAAC DORSEY
ATTORNEY FOR APPELLEE:      WILLIAM R. STRIEBECK
NATURE OF THE CASE:         CIVIL - DOMESTIC RELATIONS
DISPOSITION:                AFFIRMED: 06/19/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., WILSON AND TINDELL, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.     The Washington County Chancery Court granted Nakia and Ramona Baker an irreconcilable-differences divorce.  On appeal, Ramona challenges the chancellor's distribution of the marital estate and refusal to award periodic alimony.  Finding no abuse of discretion, we affirm the chancellor's judgment.

## FACTS

¶2.     The parties married on December 26, 1998.  They bought a house on Billings Street (the Billings Street home), and in December 2003, they welcomed a daughter.  During a separation in 2008, Ramona testified that she moved into a separate residence.  Ramona stated that she subsequently sold that home for a profit, which she used as a down payment

to buy a lot on Princeton Street. In 2010, the parties built a second marital home (the Princeton Street home) on the lot.

¶3. On August 29, 2012, Ramona filed a divorce complaint on the grounds of adultery and cruel and inhuman treatment or, alternatively, irreconcilable differences. On November 20, 2012, the Washington County County Court issued a "Final Mutual Protective Order" to the parties after finding they had been involved in multiple domestic-violence disputes and "that[,] on multiple occasions[,] both parties were the principal aggressors[,] and neither party acted in self-defense." The county court gave Nakia temporary use of the Billings Street home and Ramona temporary use of the Princeton Street home. The county court also awarded Ramona temporary custody of the parties' daughter, awarded Nakia temporary visitation, and ordered Nakia to pay temporary child support. On May 27, 2014, Nakia answered Ramona's divorce complaint, asserted his affirmative defenses, and filed a counterclaim for divorce.

¶4. At the start of their divorce hearing on September 30, 2014, the parties withdrew their fault-based grounds and consented to an irreconcilable-differences divorce. The parties also announced their agreement on the following issues: (1) shared legal custody of their daughter; (2) sole physical custody to Ramona with reasonable visitation rights to Nakia; (3) continued child-support payments by Nakia at fourteen percent of his monthly adjusted gross income;[1] (4) exclusive ownership of the Billings Street home and sole responsibility for the related mortgage payments to Nakia; and (5) exclusive ownership of the Princeton Street

---

[1] *See* Miss. Code Ann. § 43-19-101(1) (Rev. 2015) (providing guidelines for the calculation of child-support payments).

home and sole responsibility for the related mortgage payments to Ramona.[2] The only remaining issues the parties submitted for the chancellor's determination were the distribution of their marital estate and Ramona's periodic-alimony request.

¶5. On March 4, 2016, the chancellor entered a judgment granting the parties an irreconcilable-differences divorce. The chancellor determined the date of valuation for the parties' marital assets was November 20, 2012, the entry date of the county court's protective order. After considering the *Ferguson*[3] factors, the chancellor awarded Ramona the following marital assets valued at $110,600: the equity in the Princeton Street home ($85,000), the home's furnishings and appliances ($20,000), and Ramona's Toyota 4Runner ($5,600). The chancellor awarded Nakia the following marital assets valued at $110,660: the equity in the Billings Street home ($23,000), the home's furnishings and appliances ($4,000), Nakia's 1999 Chevrolet truck ($4,430) and 2006 Chevrolet Corvette ($23,000), and his retirement account ($56,230). The chancellor ordered the parties to be responsible for any debt associated with their assigned marital assets. The chancellor also found that the equitable distribution of the marital estate eliminated the need for an alimony award. Aggrieved by the chancellor's distribution of the marital estate and refusal to award periodic alimony, Ramona appeals.

**STANDARD OF REVIEW**

---

[2] Since the time of the county court's November 2012 protective order almost two years earlier, Nakia had solely resided in and paid the mortgage on the Billings Street home, and Ramona had solely resided in and paid the mortgage on the Princeton Street home.

[3] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

¶6.     This Court applies a limited standard of review to a chancellor's division and distribution of marital property. *Sims v. Sims*, 169 So. 3d 937, 940 (¶10) (Miss. Ct. App. 2014). We will affirm the chancellor's distribution of marital assets "as long as 'it is supported by substantial credible evidence.'" *Id.* (quoting *Bowen v. Bowen*, 982 So. 2d 385, 394 (¶32) (Miss. 2008)). We also decline to reverse the chancellor's determination regarding an award of alimony absent manifest error or an abuse of discretion. *Id.* However, we review questions of law de novo. *Williams v. Williams*, 224 So. 3d 1282, 1284 (¶5) (Miss. Ct. App. 2017).

## DISCUSSION

### I.     Equitable Distribution

¶7.     "When dividing marital property, chancellors are directed to (1) classify the parties' assets as marital or separate; (2) determine the value of those assets; (3) divide the marital estate equitably based upon the factors set forth in *Ferguson*; and (4) consider the appropriateness of alimony if either party is left with a deficiency." *Ewing v. Ewing*, 203 So. 3d 707, 711-12 (¶11) (Miss. Ct. App. 2016) (internal quotation marks omitted). "[F]airness is the prevailing guideline in marital division." *Ferguson*, 639 So. 2d at 929.

¶8.     Ramona asserts no challenge to the chancellor's classification and valuation of the parties' marital assets. In fact, Ramona acknowledges the chancellor evenly divided the parties' marital assets by awarding Ramona assets worth $110,600 and Nakia assets worth $110,660. However, Ramona challenges the chancellor's analysis of the *Ferguson* factors and her refusal to award periodic alimony. According to Ramona, the chancellor abused her

4

discretion by "assigning [Ramona] a substantial portion of the marital debt" and insufficient marital assets to cover that debt. Ramona further argues the chancellor failed to consider her lack of income-earning capacity when distributing the marital estate.

¶9.    As discussed, following classification and valuation, a chancellor must equitably divide the parties' marital property based on the *Ferguson* factors. *Ewing*, 203 So. 3d at 713 (¶17). These factors include the following:

> (1)    Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows: (a) direct or indirect economic contribution to the acquisition of the property; (b) contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties[,] and duration of the marriage; and (c) contribution to the education, training, or other accomplishment bearing on the earning power of the spouse accumulating the assets;
>
> (2)    The degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree, or otherwise;
>
> (3)    The market value and the emotional value of the assets subject to distribution;
>
> (4)    The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
>
> (5)    Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
>
> (6)    The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
>
> (7)    The needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and

(8)     Any other factor which in equity should be considered.

*Id.* (quoting *Ferguson*, 639 So. 2d at 928).

¶10.     In considering the *Ferguson* factors, the chancellor determined that the parties possessed no assets apart from their marital property.  While the chancellor acknowledged both parties' contributions to the accumulation of marital property, she concluded that Nakia's contributions were greater.  With regard to expenditures, withdrawals, or dissipation of marital assets, the chancellor noted Nakia's claim that Ramona transferred $24,370 from their joint checking account.  During cross-examination, Ramona stated she was unsure of the exact amount she transferred, but she admitted "it was a significant amount of money." In addition, the chancellor noted that, on another occasion, Ramona transferred $2,900 from an account titled only in Nakia's name to her own account.

¶11.     As to the remaining *Ferguson* factors, the chancellor found the parties offered no testimony about the emotional value of any assets and provided no proof about the proposed distribution's tax consequences or legal consequences to third parties.  The chancellor also found no credible testimony was offered as to the needs of each spouse.  Ramona testified that she became disabled in 2005 from emotional distress caused by an injury to the parties' daughter in 2004.  Even though she never received a diagnosis for her claimed illness, Ramona stopped working in 2005 and began receiving Social Security disability benefits. Although she "could not see any signs of [Ramona's] disability," the chancellor acknowledged Nakia's corroborating testimony about the onset of Ramona's illness in 2005.

¶12.     While the chancellor found that Ramona's illness hampered her earning potential, the

6

chancellor also noted that Ramona received $2,712.20 a month in disability benefits for herself and the parties' daughter and would "continue to receive this amount plus any [cost-of-living allowance] benefits associated with her [Public Employees' Retirement System (PERS)] account annually." The chancellor found that the PERS cost-of-living allowance benefits for 2015 amounted to $2,000 a year, which broke down to $166.67 a month. In concluding her *Ferguson* analysis, the chancellor determined that the division of the parties' marital property would eliminate the need for alimony. The chancellor therefore distributed the marital property and refused Ramona's periodic-alimony request.

¶13. "In reviewing a chancellor's judgment, this Court does not conduct a *Ferguson* analysis anew, but [we] review[] the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion." *Phillips v. Phillips*, 904 So. 2d 999, 1001 (¶8) (Miss. 2004). The record here reflects the chancellor properly analyzed all the *Ferguson* factors and then equitably divided the marital estate. Because the record contains substantial credible evidence to support the chancellor's division and distribution of the marital estate, we find no abuse of discretion. *See Sims*, 169 So. 3d at 940 (¶10). Accordingly, this assignment of error lacks merit.

## II. Alimony

¶14. Ramona also challenges the chancellor's refusal to award periodic alimony. The Mississippi Supreme Court has long acknowledged that equitable distribution and alimony are intertwined and should be considered together to prevent inequity. *Ferguson*, 639 So. 2d at 929. However, a chancellor should only consider a periodic-alimony award where he or

7

she "determines that a spouse has suffered a disparity of income and standard of living following the equitable division of the marital assets." *Ewing*, 203 So. 3d at 715 (¶26) (quoting *George v. George*, 22 So. 3d 424, 428 (¶6) (Miss. Ct. App. 2009)).

¶15. Following the equitable distribution of Ramona and Nakia's marital estate, the chancellor determined that sufficient assets existed to adequately provide for both parties and that Ramona suffered no deficit. The chancellor therefore denied Ramona's alimony request. In reaching this determination, the chancellor found Nakia's monthly adjusted gross income amounted to $3,240.26 and that Ramona's monthly disposable income amounted to slightly more at $3,332.51. As previously discussed, the chancellor found that Ramona received: (1) $2,712.20 a month in disability benefits for herself and the parties' daughter, and (2) a cost-of-living allowance benefit from her PERS account, which amounted to $166.67 a month in 2015. In addition, pursuant to the chancellor's divorce judgment, Ramona received $453.64 a month in child support. Because substantial credible evidence supports the chancellor's findings on this issue, we conclude no abuse of discretion occurred from the denial of Ramona's periodic-alimony request. We therefore find this assignment of error lacks merit.

## CONCLUSION

¶16. Because substantial credible evidence supports the chancellor's determination, we find no abuse of discretion. We therefore affirm the chancellor's judgment.

¶17. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

8